Yongmoon Kim
KIM LAW FIRM LLC
411 Hackensack Avenue, Suite 701
Hackensack, New Jersey 07601
Telephone & Fax (201) 273-7117
ykim@kimlf.com

Ronald I. LeVine
ron@ronlevinelaw.com
Eileen L. Linarducci
elinarducci@ronlevinelaw.com
LAW OFFICE OF RONALD I. LEVINE, ESQ.
210 River Street, Suite 11
Hackensack, New Jersey 07601
Tel. (201) 489-7900
Fax (201) 489-1395

*Attorneys for Plaintiff David M. Liebman*

| | |
|---|---|
| DAVID M. LIEBMAN, *on behalf of himself and those similarly situated,*<br><br>    Plaintiff,<br><br>    vs.<br><br>FINANCIAL RECOVERY SERVICES, INC.; LVNV FUNDING, LLC; and JOHN DOES 1 to 10,<br><br>    Defendants. | Civil Action No. 2:21-cv-15725-JMV-LDW<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br>**and JURY DEMAND** |

Plaintiff David M. Liebman, individually and on behalf of those similarly situated, by way of First Amended Class Action Complaint against Defendants Financial Recovery Services, Inc., LVNV Funding, LLC, and John Does 1 to 10, states:

### NATURE OF THE CASE

1.    This is a putative class action arising from Defendants, Financial Recovery Services, Inc. and LVNV Funding, LLC's unlawful disclosure of private financial information to

third parties without the prior consent of the consumers.

2.      The Fair Debt Collection Practices Act prohibits the disclosure of information to third parties to prevent identity theft and invasions of privacy. As the National Consumer Law Center put it eloquently:

> As the world has gone digital, consumers' records, both financial and otherwise, are increasingly vulnerable to exposure. Transactions that were once fleeting, recorded only on paper and filed in some cabinet, or perhaps reduced to microfiche, are now but mouse-clicks away from duplication and dissemination.

> Unregulated databases, escalating numbers of mergers, and the proliferation of information brokers—private investigators who specialize in obtaining computerized records—all threaten privacy. As was noted in Congress, "databases of personal identifiable information are increasingly prime targets of hackers, identity thieves, rogue employees, and other criminals, including organized and sophisticated criminal operations."

> The internet raises particular privacy concerns, as information sent over the World Wide Web may pass through dozens of different computer systems, each of which can snatch and hold the information in its coffers. In addition, website owners can track consumers' online behavior and gather information about their preferences, often without their knowledge. Web bugs, or tiny graphics that are put into web pages and e-mails, can monitor who views the information. Clickstream data can tell website owners which pages of the site were viewed and for how long. "Cookies" dropped onto a computer may not identify the user by name but do identify the particular computer, which allows an interested party to assemble a great deal of information about that computer's user.

> Financial information is especially sensitive, able to reveal not just a consumer's standard of living and debt load, but also personal preferences and lifestyle details ranging from books bought to prescriptions purchased. In *California Bankers Ass'n v. Shultz*, Justice Powell pointed out that "[f]inancial transactions can reveal much about a person's activities, associations, and beliefs." Justice Douglas elaborated further:

> A checking account . . . [m]ay well record a citizen's activities, opinion, and beliefs as fully as transcripts of his telephone conversations . . . In a sense a person is defined by the checks he

writes. By examining them the agents get to know his doctors, lawyers, creditors, political allies, social connections, religious affiliation, educational interests, the papers and magazines he reads, and so on ad infinitum.

The same can be said of credit card charges, debit purchases, and online transactions. Forty years later, the details of these revealing consumer activities are easily collected, compiled, analyzed, and accessed, and thus have created a lucrative market for their trade. One industry leader among data aggregation companies, Acxiom, advertises that it has data on 2.5 billion consumers. Acxiom claims that one of its products covering American consumers has data on 250 million consumers, offering data not just on individual demographics, but also household characteristics, financial information, life events, major purchases, and behavior, all of which allows for targeted marketing. Experian reports that it manages data on more than 300 million consumers and 126 million households, while Equifax claims a database of over 115 million U.S. households distributed over 150 different segment groups, which can be used to predict behavior. In 2017, Equifax suffered a data breach that involved the personal data on nearly half the United States population being stolen, a breach that a Congressional committee found to have been "entirely preventable." In 2014, the Federal Trade Commission filed a complaint against another data broker that allegedly bought the payday loan applications of consumers and then sold the information to marketers with no legitimate need for it, leading some scammers among them to debit millions from the consumers' account.

National Consumer Law Center, Fair Credit Reporting (9th ed. 2017) § 18.1, *updated at*

www.nclc.org/library (footnotes omitted and alterations in original) (attached as ***Exhibit A***).

3.    For example, in enacting the FDCPA, Congress found "abundant evidence of the

use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive

debt collection practices contribute to the number of personal bankruptcies, to marital instability,

to the loss of jobs, and **to invasions of individual privacy**. 15 U.S.C. § 1692(a). *See also*

*Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303-04 (3d Cir. 2014) ("The disclosure of [the

consumer's] account number raises these privacy concerns. The account number is a core piece of

information pertaining to [the consumer's] status as a debtor and Convergent's debt collection

effort. Disclosed to the public, it could be used to expose her financial predicament. Because Convergent's disclosure implicates core privacy concerns, it cannot be deemed benign.").

4.      Despite the *Douglass* ruling, Defendants continue to misuse and unlawfully disclose private financial information about consumers to third-parties.

5.      Defendants' disclosure of sensitive financial information to third parties is an act consistent with a course of conduct and practice which was either designed to, or had as its natural consequence, an attempt to obtain money from consumers through the use of false, misleading, deceptive, abusive, unfair, unconscionable, and unlawful conduct prohibited by common law and statutory law including, but not limited to, the Consumer Fraud Act ("CFA"), N.J.S.A. 56:8-1, *et seq.*, and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, *et seq.*

6.      Defendants are subject to strict liability under the FDCPA for the prohibited communication with third parties "without the prior consent of the consumer given directly to the debt collector . . . in connection with the collection of [the] debt, with any person other than the consumer . . . ." 15 U.S.C. § 1692c(b) and for violating 15 U.S.C. § 1692d(3).

7.      Defendants also violated 15 U.S.C. § 1692f(8) by "[u]sing any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails . . . ."

8.      Thus, Plaintiff bring this class action for damages against Defendants arising from Defendants' unlawful disclosure of sensitive and confidential personal identifying and financial information, when attempting to collect debts from New Jersey consumers.

9.      Defendants are subject to strict liability under the FDCPA for communicating with third parties "without the prior consent of the consumer given directly to the debt collector . . . in connection with the collection of [the] debt, with any person other than the consumer . . . ."

**JURISDICTION AND VENUE**

10.     This Court has jurisdiction to entertain this matter pursuant to 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

11.     Venue was removed by Defendants from the Superior Court of New Jersey, Essex County, to the District of New Jersey, Newark Vicinage.

**PARTIES**

12.     Plaintiff, David M. Liebman ("Liebman"), is a natural person.

13.     "Plaintiff" refers to Liebman.

14.     At all times relevant to this lawsuit, Plaintiff was a citizen of the State of New Jersey.

15.     Defendant, Financial Recovery Services, Inc. ("FRS") is a collection agency with an office located at 4510 West 77th Street, Suite 200, Edina, Minnesota 55435.

16.     Defendant, LVNV Funding, LLC ("LVNV") is a collection agency with an office located at 6801 S. Cimarron Road, Suite 424-J, Las Vegas, Nevada 89113 .

17.     Defendants John Does 1 to 10 are natural persons and/or business entities all of whom reside or are located within the United States and personally created, instituted and, with knowledge that such practices were contrary to law, acted consistent with and oversaw policies and procedures used by the employees of Defendants that are the subject of this Complaint. Those defendants personally control the illegal acts, policies, and practices utilized by Defendants and, therefore, are personally liable for all of the wrongdoing alleged in this Complaint. Those fictitious names of individuals and businesses alleged for the purpose of substituting names of defendants whose identity will be disclosed in discovery and should be made parties to this action.

18.     Some or all of John Does 1-10 set the policies and practices complained of herein.

19.     Some or all of John Does 1-10 were actively engaged in the practices complained of

herein.

20.     In this pleading, "Defendants" in the plural refers to all Defendants.

FACTUAL ALLEGATIONS

**A.    Allegations Regarding Defendants' Practices Generally**

21.     Defendants regularly collect or attempt to collect debts that are past due.

22.     Defendants regularly collect or attempt to collect debts allegedly owed to others which were incurred primarily for personal, family or household purposes.

23.     Defendants are in the business of collecting debts or alleged debts of natural persons which arise from transactions which are primarily for personal, family, or household purposes.

24.     The alleged receivables associated with the debts were assigned to Defendants for the purpose of collection.

25.     Defendants use the mails, telephone, the internet and other instruments of interstate commerce in engaging in the business of collecting defaulted debts or alleged debts of natural persons which arise from transactions which are primarily for personal, family, or household purposes.

26.     Defendants are collection agencies.

**B.    Plaintiff Liebman**

27.     Defendants have asserted that Liebman allegedly incurred or owed certain financial obligations arising out of a personal account.

28.     The debt ("Debt") arose from one or more transactions which were primarily for Liebman's personal, family or household purposes.

29.     This account ("Account") was assigned to Defendants for collection.

30.     Defendants contend that the Account is past due and in default.

31.    The Account was past due and in default at the time it was placed with or assigned to Defendants for collection.

32.    In an attempt to collect the Debt, FRS mailed collection letters to Liebman on July 9, 2020 ("7/9/20 Letter") and August 13, 2020 ("8/13/20 Letter") to collect.

33.    A true copy of the FRS Letters[1] but with redactions, is attached as ***Exhibit B***.

34.    Liebman received and reviewed the FRS Letters.

35.    Upon information and belief, the FRS Letters were mailed using a third-party letter vendor.

36.    Liebman never provided consent to Defendants to communicate to third parties regarding his Debt.

37.    By using a letter vendor, Defendants have recklessly disclosed Liebman's personal identifying information and private information about his Debt to a third party without Liebman's prior consent.

38.    Defendants unlawfully disclosed information about Liebman's Debt including the account number associated with the Debt and the alleged balances due.

39.    The FDCPA prohibits a debt collector from communicating with third parties "without the prior consent of the consumer given directly to the debt collector . . . in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector ."[2]

40.    The FDCPA also prohibits "[t]he publication of a list of consumers who allegedly

---

[1] FRS Letters mean the 7/9/20 Letter and the 8/13/20 Letter.
[2] 15 U.S.C. § 1692c(b).

refuse to pay debts . . . ."[3]

41.    Unlawfully communicating with a third party letter vendor regarding Plaintiff's debt violates the FDCPA because it is impermissible communication under sections 1692c(b) and 1692d(3) which has the potential to cause harm to a consumer.

42.    The FDCPA also deems as unfair and unconscionable the "[use of] any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails . . . ." 15 U.S.C. § 1692f(8).

43.    Upon information and belief, the return address—P.O. Box 4115, Concord, CA 4115—does not belong to FRS. Since it is not the debt collector's address, FRS violated section 1692f(8).

44.    FRS used the same procedures it used in sending the FRS Letters to Plaintiff when sending the same and/or similar letters to numerous other New Jersey consumers.

45.    During the proposed class period, FRS sent letters the same or similar to the FRS Letters to numerous New Jersey consumers in an attempt to collect a debt.

46.    It is Defendants' policy and practice to unlawfully communicate and convey private and sensitive information about consumers with third parties by using third party vendors to send written collection communications in attempts to collect consumer debts.

47.    Upon information and belief, Defendants published a list of debtors, including Plaintiff, that allegedly refuse to pay debts.

48.    It is Defendants' policy and practice to engage in unfair and unconscionable practices including "[u]sing any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails . . . ." 15 U.S.C. §

---

[3] 15 U.S.C. § 1692d(3).

1692f(8).

49.     Upon learning his private financial information was published to a third party,

Plaintiff experienced stress, anxiety, and embarrassment.

**CLASS ACTION ALLEGATIONS**

50.     Plaintiff brings this action individually and as a class action on behalf of all others

similarly situated pursuant to Rule 23.

51.     Subject to discovery and further investigation which may require Plaintiff to modify

the following class definition at the time Plaintiff moves for class certification, Plaintiff seeks

certification of a class initially defined as follows:

> **Class**: All natural persons residing in the State of New Jersey whose
> information was disclosed by Financial Recovery Services, Inc., to a
> third party on or after July 8, 2015, in an attempt to collect a debt on
> behalf of LVNV Funding, LLC.
>
> > **FDCPA Subclass**: All natural persons residing in the State of
> > New Jersey, to whom Financial Recovery Services, Inc., sent
> > a collection letter; which letter (a) was dated within one year
> > prior to July 8, 2021; (b) was seeking to collect a consumer
> > debt allegedly owed to LVNV Funding, LLC; and (c) was
> > sent using a third party letter vendor.

52.     Plaintiff seeks to recover statutory damages, actual damages, and attorney's fees

and costs on behalf of himself and all class members under the claims asserted herein.

53.     The Class for whose benefit this action is brought is so numerous that joinder of all

members is impracticable.

54.     There are questions of law and fact common to the members of the Class that

predominate over questions affecting only individuals.

55.     A class action is superior to other available methods for the fair and efficient

adjudication of this controversy since joinder of all members is impracticable. A class action will

cause an orderly and expeditious administration of the claims of the Class and will foster

economies of time, effort and expense by avoiding thousands of individual suits that will be based on the same legal theories that can be resolved in a single proceeding.

56.     Plaintiff's claim is typical of the claims of the members of the Class. They are a member of the Class.

57.     The questions of law and/or fact common to the members of the Class predominate over any questions affecting only individual members.

58.     Plaintiff does not have interests antagonistic to those of the Class.

59.     The Class, of which Plaintiff is a member, are readily identifiable. The Defendants have records of each account.

60.     Plaintiff will fairly and adequately protect the interests of the Class, and have retained competent counsel experienced in the prosecution of consumer litigation. Proposed Class Counsel have investigated and identified potential claims in the action; have a great deal of experience in handling class actions, other complex litigation, and claims of the type asserted in this action.

61.     The prosecution of separate actions by individual members of the Class would run the risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for the Defendants in this action or the prosecution of separate actions by individual members of the class would create the risk that adjudications with respect to individual members of the class would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests. Prosecution as a class action will eliminate the possibility of repetitious litigation.

62.     Plaintiff does not anticipate any difficulty in the management of this litigation.

**FIRST COUNT**
**DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF FOR THE CLASS**

63.    Plaintiff repeats and realleges all prior allegations as if set forth at length herein.

64.    Defendants' prohibited disclosure of private and sensitive information constitute unfair and unconscionable commercial practices and otherwise violate the Consumer Fraud Act ("CFA") at N.J.S.A. 56:8-2 and the FDCPA at 15 U.S.C. § 1692 *et seq.*

65.    Plaintiff suffered ascertainable loss from Defendants' CFA violations.

66.    Plaintiff therefore has standing to seek injunctive and other equitable relief under the CFA, at N.J.S.A. 56:8-19, and the FDCPA.

67.    Upon information and belief, Defendants continue to pursue collection against Plaintiff, so Plaintiff remains at risk for further prohibited disclosure of private and sensitive information by Defendants to unauthorized third parties.

68.    Moreover, under the Uniform Declaratory Judgments Law at N.J.S.A. 2A:16-53, the Plaintiff and the putative Class members can seek declaratory relief.

69.    The Defendants and their agents or others acting on their behalf should be enjoined from any further action or failing to take actions that result in any invasion of privacy, retain benefits from its illegal acts by the use of protected private and financial information.

**WHEREFORE**, as to Count One, Plaintiff, on behalf of himself and the putative class members, hereby requests a Judgment against Defendants, jointly and severally,

a.    Granting class certification for class-wide equitable relief under Rule 23(b)(2), and issuing a declaratory judgment applicable to the Plaintiff and putative Class and Subclass, pursuant to the Uniform Declaratory Judgments Law at N.J.S.A. 2A:16-53, ruling that:

1.    Defendants violated the CFA.

2.  Defendants violated the FDCPA.

b.  Granting a permanent injunction against the Defendants, pursuant to the CFA, at N.J.S.A. 56:8-19, and the FDCPA prohibiting them from the disclosure of consumer's information;

c.  Directing the Defendants to provide equitable notice relief pursuant to the CFA and FDCPA, providing for notice to Class members of the declaratory and injunctive ruling.

d.  Awarding Plaintiff's counsel reasonable attorneys' fees and costs under the CFA;

e.  For such other and further relief as the Court deems equitable and just.

## SECOND COUNT
### DAMAGES UNDER THE CONSUMER FRAUD ACT ON BEHALF OF THE CLASS

70.  Plaintiff repeats and realleges all prior allegations as if set forth at length herein.

71.  Defendants are "persons" within the meaning of the CFA at N.J.S.A. 56:8-1.

72.  Plaintiff and those similarly situated obtained "merchandise" within the meaning of the CFA at N.J.S.A. 56:8-1.

73.  Defendants engaged in unconscionable commercial practices, deception, fraud, false promises, false pretenses and/or misrepresentations in connection with the sale of merchandise in violation of the CFA at N.J.S.A. 56:8-2.

74.  Defendants engaged in unconscionable commercial practices, deception, fraud, false promises, false pretenses and/or misrepresentations in the subsequent performance of the sale of merchandise in violation of the CFA at N.J.S.A. 56:8-2.

75.  Defendants committed unconscionable commercial practices, deception, fraud, false promises, false pretenses and/or misrepresentations in direct violation of the CFA at N.J.S.A. 56:8-2.

76.  As a result of Defendants' unlawful actions, Plaintiff and the Class members

suffered ascertainable loss from Defendants' CFA violations, entitling them to treble damages under the CFA, at N.J.S.A. 56:8-19.

**WHEREFORE**, as to Count Two, Plaintiff, on behalf of himself and the putative Class members, hereby requests a Judgment against Defendants,

a.  Granting class certification of the Subclass under Rule 23(b)(3);

b.  Awarding treble damages under the CFA, at N.J.S.A. 56:8-19;

c.  Awarding Plaintiff's counsel reasonable attorneys' fees and costs under the CFA, at N.J.S.A. 56:8-19;

d.  For pre-judgment and post-judgment interest; and

e.  For such other and further relief as the Court deems equitable and just.

### THIRD COUNT
### NEGLIGENCE ON BEHALF OF THE CLASS

77.  Plaintiff repeats and realleges all prior allegations as if set forth at length herein.

78.  Defendants owed the Plaintiff a duty to maintain the confidentiality of his private and financial information.

79.  Defendants, as debt collectors, were not allowed to publish said private financial information in accordance with the Fair Debt Collection Practices Act.

80.  Accordingly, the FDCPA establishes a certain standard of conduct for debt collectors when handling a debtor's confidential information.

81.  Expert testimony is not required to establish that the disclosure of confidential and protected information breaches a commonly known duty owed by Defendants.

82.  The disclosure of the confidential and protected information of the Plaintiff and the Class damaged them by exposing their private information to persons who lacked any right or entitlement to know their private information.

83.     The Plaintiff and others have suffered a compensable loss arising from the disclosure of their protected private and financial information.

84.     The Class has likewise suffered a compensable loss arising from the disclosure of their protected private and financial information.

**WHEREFORE**, as to Count Three, Plaintiff, on behalf of himself and the putative Class members, hereby requests a Judgment against Defendants,

a.   Granting class certification of the Class under Rule 23(b)(3);

b.   A money judgment for compensatory damages based on the Defendants' disclosure of the Plaintiff and Class' private information;

c.   For attorney's fees, litigation expenses and costs in connection with this action;

d.   For pre-judgment and post-judgment interest; and

e.   For such other and further relief as the Court deems equitable and just.

### FOURTH COUNT
### INVASION OF PRIVACY ON BEHALF OF THE CLASS

85.     Plaintiff repeats and realleges all prior allegations as if set forth at length herein.

86.     Defendants invaded the privacy of Plaintiff by unreasonable publication of private facts.

87.     These private facts, Plaintiff's financial information, are actually private matters, the dissemination of such facts would be offensive to a reasonable person and there is no legitimate interest of the public in being apprised of the facts publicized.

88.     Defendants were prohibited by 15 U.S.C. § 1692c(b) and 1692d(3) from publishing said financial information to third parties.

89.     Plaintiff had a reasonable expectation that said financial information would not be shared except in compliance with the law.

90.    The Plaintiff and others have found the disclosure of financial information to third parties in violation of the law to be highly offensive.

91.    Expert testimony is not required to establish that the disclosure of confidential financial information invaded a person's privacy.

92.    By publishing the private financial information of the Plaintiff and the Class, Defendants damaged them by exposing their private information to persons who lacked any right or entitlement to know their private financial information.

93.    The Plaintiff and others have suffered a compensable loss arising from the invasion of their privacy.

94.    The Class has likewise suffered a compensable loss arising from the invasion of their privacy.

**WHEREFORE**, as to Count Four, Plaintiff, on behalf of himself and the putative Class members, hereby requests a Judgment against Defendants,

a.    Granting class certification of the Class under Rule 23(b)(3);

b.    A money judgment for compensatory damages based on the Defendants' invasion of the privacy of the Plaintiff and Class;

c.    For attorney's fees, litigation expenses and costs in connection with this action;

d.    For pre-judgment and post-judgment interest; and

e.    For such other and further relief as the Court deems equitable and just.

### COUNT FIVE
### FAIR DEBT COLLECTION PRACTICES ACT FOR THE FDCPA SUBCLASS

95.    Plaintiff repeats and realleges all prior allegations as if set forth at length herein.

96.    Defendants are "debt collectors" within the meaning of 15 U.S.C. § 1692a(6).

97.    The Debt is a "debt" within the meaning of 15 U.S.C. §1692a(5).

98.     Plaintiff is a "consumer" within the meaning of 15 U.S.C. § 1692a(3).

99.     The FRS Letters are "communication[s]" as defined by 15 U.S.C. § 1692a(2).

100.    Defendants sent the FRS Letters in an attempt to collect a "debt" within the meaning of 15 U.S.C. §1692a(5).

101.    Defendants violated the FDCPA including sections 1692c, 1692c(b), 1692d, 1692d(3), and 1692f of the FDCPA.

102.    Based on any one of those violations, Defendants are liable to Plaintiff and the Class for statutory damages, attorney's fees and costs under 15 U.S.C. § 1692k.

**WHEREFORE**, as to Count Five, Plaintiff, on behalf of himself and the putative Class members, hereby requests a Judgment against Defendants, Financial Recovery Services, Inc. and LVNV Funding, LLC,

a.  An order certifying that the Cause of Action may be maintained as a class pursuant to Rule 23 including defining the class, defining the class claims, and appointing Plaintiff as the class representative and the undersigned attorney as class counsel;

b.  An award of statutory damages for Plaintiff pursuant to 15 U.S.C. § 1692k(a)(2)(A) and § 1692k(a)(2)(B)(i);

c.  An award of statutory damages for the Class pursuant to 15 U.S.C. § 1692k(a)(2)(B)(ii);

d.  Attorney's fees, litigation expenses, and costs pursuant to 15 U.S.C. § 1692k(a)(B)(3); and

e.  For pre-judgment and post-judgment interest; and

f.  For such other and further relief as may be just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues subject to trial by jury.

## CERTIFICATION

Pursuant to Local Civil Rule 11.2, I hereby certify to the best of my knowledge that the matter in controversy is not the subject of any action pending in any court, or the subject of a pending arbitration, or administration proceeding. However, there are two similar cases styled *Edward Scibilia v. Financial Recovery Services, Inc., et al*., 2:21-cv-13173-MCA-MAH (D.N.J) (formerly ESX-L-3924-21), and *Mahmoud v. Financial Recovery Services, Inc., LLC, et al*., ESX-L-9291-21 (Super. Ct. Law Div.).

Dated: January 21, 2022                    KIM LAW FIRM LLC

                                           *s/Yongmoon Kim*
                                           Yongmoon Kim, Esq.

                                           *Attorneys for Plaintiff*